UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KRZYSZTOF WOLEK,     Plaintiff,

v.     Civil Action No. 3:24-cv-138-DJH

UNIVERSITY OF LOUISVILLE and
TERESA REED,     Defendants.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiff Krzysztof Wolek sued his employer, the University of Louisville ("UofL"), alleging violation of his First Amendment rights and Kentucky's Campus Free Speech Protection Act. (Docket No. 1) UofL moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). (D.N. 6) Wolek subsequently amended his complaint, substituting Teresa Reed as the named defendant and removing the state-law claim. (D.N. 8) Reed now moves to dismiss on the ground that Wolek fails to state a violation of his First Amendment rights.[1] (D.N. 15) In the alternative, Reed argues that she is protected by qualified immunity in her individual capacity; that the amended complaint fails to state a claim against her in her official capacity; and that the amended complaint is time-barred under the applicable statute of limitations. (*Id.*) After careful consideration, the Court will grant Reed's motion to dismiss for the reasons set forth below.

---

[1] Although Reed's motion initially states that it is brought under Rules "12(b)(6) and 12(b)(1)," (D.N. 15, PageID.56), it does not contain any discussion of subject-matter jurisdiction. (*See generally* D.N. 15) The Court is unaware of any grounds for dismissing the claims against Reed pursuant to Rule 12(b)(1). Accordingly, the Court will address only Reed's arguments under Rule 12(b)(6).

1

I.

The Court "take[s] the facts only from the [amended] complaint, accepting them as true as [it] must do in reviewing a Rule 12(b)(6) motion." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed. R. Civ. P. 12(b)(6)).  Wolek is a tenured full professor in UofL's School of Music.  (D.N. 8, PageID.32 ¶¶ 8, 10)  In December 2021, after the Acting Grawemeyer Award Director announced his retirement, Wolek expressed interest in the role to colleagues and Music Department Chair Jerry Tolson.[2] (*Id.* ¶ 11)  Although Wolek was "unanimously nominated by [the Composition and Creative Studies Department of the School of Music] to take over the Grawemeyer Award Director position" and had submitted his name for consideration, the position went to another faculty member.[3] (*Id.*, PageID.33 ¶ 12; *see id.* 13–14)

On February 22, 2022, Wolek raised concerns about the selection process.  (*Id.* ¶ 15)  Reed then "sent an email to the administration stating, 'The message you received from Dr. Wolek is just the latest iteration of a pattern of behavior to which [sic] he resorts to canvassing support for his position when decisions are not to his liking.'" (*Id.*)  One year later, on February 22, 2023, Wolek emailed Reed and Tolson expressing "concerns that the most recent administration of the Grawemeyer Award was not in compliance with the requisite policies and procedures" and requesting a meeting to discuss those concerns.  (*Id.* ¶ 16)  In response, Reed demanded supporting evidence of Wolek's claims within 24 hours.  (*Id.*, PageID.33¶ 16)  When Wolek replied that he was unable to comply with those demands "and disagreed with how Dr. Reed reacted to his email

---

[2] The Grawemeyer Awards are presented annually by the University of Louisville in several fields, including music composition.  *See* Grawemeyer Awards (2024), http://grawemeyer.org/ (last visited Mar. 31, 2025).

[3] The amended complaint uses the abbreviation "CCS" without explanation.  (D.N. 8, PageID.33 ¶¶ 12–14, PageID.34 ¶ 17)  Wolek's response to the motion to dismiss states that the abbreviation refers to the Composition and Creative Studies Department within the School of Music.  (D.N. 17, PageID.105)

expressing concerns, Dr. Reed responded in an adversarial and demeaning manner." (*Id.*, PageID.33–34 ¶ 16)

On March 7, 2023, Reed sent an email to CCS faculty "instructing them to 'kindly refrain from discussing the [Grawemeyer] [A]ward's structure, rules, and procedures.'" (*Id.*, PageID.34 ¶ 17) Wolek emailed colleague Barry Johnson on March 26, 2023, with concerns about the judge-selection process for the award. (*Id.* ¶ 18) Two days later, Wolek "received a request to engage in the Faculty Accountability Policy ('FAP') investigation . . . . reiterat[ing] Dr. Reed's 'request and expectation' to not discuss the Grawemeyer Award." (*Id.* ¶ 19) Wolek "received FAP charges" on April 5, 2023, alleging that his email to Johnson about the Grawemeyer Award "was 'unprofessional and disruptive to the work environment.'" (*Id.* ¶ 20)

On May 3, 2023, Wolek met with Tolson and Reed about the FAP investigation, and Reed threatened "further disciplinary action, up to and including termination." (*Id.* ¶ 21) Wolek appealed on May 8, 2023, but Reed "reconfirmed FAP's findings and stated that the matter was concluded." (*Id.* ¶ 22)

In his amended complaint, Wolek alleges violation of his First Amendment rights pursuant to 42 U.S.C. § 1983. (*Id.*, PageID.34–35 ¶¶ 23–29) He asserts that Reed's March 7, 2023 email instructing faculty not to discuss the Grawemeyer Award was an unlawful prior restraint on free speech. (*Id.*, PageID.35 ¶ 25) Wolek further alleges that Reed unlawfully retaliated against him for emailing Johnson with his concerns about the Grawemeyer Award and for "complain[ing] about compliance issues to Tolson and Dr. Reed." (*Id.* ¶¶ 25–26)

Reed now moves for dismissal pursuant to Rule 12(b)(6), arguing that Wolek fails to state a violation of his First Amendment rights. (D.N. 15) Reed further argues that (1) she is protected by qualified immunity in her individual capacity; (2) the amended complaint fails to state a claim

3

against her in her official capacity; and (3) the amended complaint is time-barred. (*Id.*, PageID.56) As explained below, the Court agrees that Wolek fails to state a First Amendment violation.

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supposed by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than mere possibility of misconduct" fails to show that the plaintiff "is entitled to relief," Fed. R. Civ. P. 8(a)(2), and thus will not withstand a motion to dismiss. *Iqbal*, 556 U.S. at 679.

### A.   Material Outside the Pleadings

Generally, courts may consider only the factual allegations in the pleadings when deciding a motion to dismiss. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). If matters outside the pleadings are presented on a motion to dismiss and not expressly excluded by the Court, the Court must treat the motion to dismiss as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Bates*, 958 F.3d at 483. There are a few exceptions, however: courts may consider documents attached to the complaint, documents attached to the defendant's motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein," and public records without converting the motion to a motion for summary judgment. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

4

Here, Reed attached to her motion to dismiss the email that Wolek wrote to Johnson on March 26, 2023, which triggered the disciplinary action central to Wolek's free-speech claims. (*See* D.N. 15-2; *see also* D.N. 8)  Wolek also cited this email several times in his response to Reed's motion to dismiss.  (*See* D.N. 17, PageID.106, 111)  The Court may consider the email without converting the motion because the email is central to Wolek's claims and referred to in the amended complaint.  *See Rondigo*, 641 F.3d at 681; *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (considering insurance policies attached to the motion to dismiss, which were frequently referred to in the complaint and central to the plaintiffs' claims).

**B.      First Amendment**

States "can . . . abridge the freedom of speech when they act in their employer capacity to restrict the speech of public employees on threat of termination or other discipline." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 877 (6th Cir. 2024) (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist.* 205, 391 U.S. 563, 568 (1968)).  But "[a]t the same time, [s]tates have far greater freedom to restrict speech when they wear their employer (rather than their regulator) 'hats.'" *Id.* (citing *United States v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 465 (1995)).  The two primary legal theories for First Amendment claims under the § 1983 framework are retaliation and prior restraint, *see id.*; Wolek asserts both here.  (D.N. 8, PageID.35)

        **1.      Retaliation**

Free-speech retaliation claims under § 1983 have three elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Handy-Clay*, 695 F.3d at 539 (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)).

5

Here, Wolek alleges that his email to Johnson was protected speech and that he was subjected to disciplinary action in retaliation for that speech.[4] (D.N. 8, PageID.35 ¶ 25–27) Reed maintains that the email does not constitute protected speech. (D.N. 15, PageID.62–67)

The Supreme Court has outlined a two-part test for determining whether the First Amendment protects past speech in the employment context: (1) "[e]mployees must speak as private citizens, not as part of their 'official' job duties," and (2) the speech must be on a topic of "'public concern,' not personal concern." *Blick*, 105 F.4th at 877–78 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006); *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "If the speech passes these two tests, the Supreme Court engages in a 'balance' of interests at the second step." *Id.* at 878 (citing *Pickering*, 391 U.S. at 568).

Reed argues that Wolek was not speaking as a private citizen or on a matter of public concern and that UofL's interest in maintaining a professional workplace outweighs Wolek's allegedly protected speech. (D.N. 15, PageID.62–67) "A matter of public concern generally involves 'any matter of political, social, or other concern to the community.'" *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 725 (E.D. Mich. 2021) (quoting *Leary v. Daeschner*, 349 F.3d 888, 899 (6th Cir. 2003)). For example, "speech involves a public concern when it touches on 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Id.* (quoting *Banks v. Wolfe*

---

[4] The amended complaint also alleges that Wolek's email to Reed and Tolson was constitutionally protected (D.N. 8, PageID.35 ¶ 25–26); however, that basis for the claim was not addressed in the motion to dismiss (D.N. 15, PageID.71) or in Wolek's response (*see generally* D.N. 17). In any event, the amended complaint states that Wolek sent the email to Reed and Tolson "pursuant to University Policy, which requires faculty members to report compliance concerns." (D.N. 8, PageID.33 ¶ 6) He thus was speaking "as part of [his] 'official' job duties," *Blick*, 105 F.4th at 877–78 (citation omitted), on matters of "internal . . . policy," *Thomson v. Scheid*, 977 F.2d 1017, 1021 (6th Cir. 1992), and the email was not protected. *See id.*; *see also Boulton v. Swanson*, 795 F.3d 526, 532–34 (6th Cir. 2015).

*Cnty. Bd. of Educ.*, 330 F.3d 888, 893 (6th Cir. 2003)). Here, Wolek's email expressed frustration with the "secretive" judge-selection process for the Grawemeyer Award, criticized the administration for "creating division" among faculty members, and emphasized the need for faculty within the concentration to "stay together" and "communicate." (D.N. 15-2) It thus is "better characterized as an 'employee grievance concerning internal office policy,' which is something that only the employees themselves would be concerned about." *Golembiewski v. Logie*, 516 F. App'x 476, 477 (6th Cir. 2013) (quoting *Connick v. Myers*, 461 U.S. at 154).

Wolek argues that the Grawemeyer Award is a matter of public concern because it draws nominations from around the world. (*See* D.N. 17, PageID.112) But the award's international prestige does not alter the fact that Wolek's email addressed his displeasure with internal office politics. (*See* D.N. 15-2) And the Sixth Circuit has "explicitly rejected the notion that 'internal personnel disputes or complaints about an employer's performance' constitute a matter of public concern." *Ryan v. Blackwell*, 979 F.3d 519, 526 (6th Cir. 2020) (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001)). Wolek thus fails to state a claim of First Amendment retaliation.

    **2.    Prior Restraint**

Wolek alleges that Reed's admonition to the faculty in her March 7, 2023 email to refrain from commenting on the Grawemeyer Award constitutes "an unlawful prior restraint on free speech." (D.N. 8, PageID.35 ¶ 24) In her motion to dismiss, Reed argues that the tone of the email clearly indicates that it was a request, not an order, and that it was simply an entreaty "to faculty to hold off on discussions related to an internal matter while University counsel" conducted a review. (D.N. 15, PageID.61–62) In response, Wolek contends that Reed's email "carries an implicit threat of punishment for anyone who fails to comply" and that the "supposedly informal

7

tone of [Reed's] email should not cloak the unconstitutional request contained within." (D.N. 17, PageID.108)

"A prior restraint is an administrative or judicial order that forbids certain speech ahead of when that speech is planned to take place." *Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022) (emphasis removed) (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)). At times, public employers have "adopt[ed] employee-targeted 'prior restraints' on speech by prohibiting employees from speaking about certain topics in the future (on the threat of discipline)." *Blick*, 105 F.4th at 877 (emphasis removed) (collecting cases). "Where a public employee plaintiff 'raise[s] a First Amendment prior-restraint claim, [the court must] apply the two-part *Pickering* analysis to determine whether [the employer's] order was an unconstitutional prior restraint of a public employee's speech.'" *Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 854 (E.D. Mich. 2015) (quoting *Whitney v. City of Milan*, 677 F.3d 292, 296 (6th Cir. 2012)). As with the two-part retaliation test outlined above, the Court must first evaluate "whether the affected speech involved a public employee's comments as a private citizen on a matter of public concern." *Whitney*, 677 F.3d at 296. "If the speech involves a matter of public concern," the Court must next balance "the interests of the public employee, 'as a citizen, in commenting upon matters of public concern[,] and the interest of the [s]tate, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Connick*, 461 U.S. at 140); *see also Pickering*, 391 U.S. at 568.

Reed's email to the School of Music faculty addressed internal policy regarding a UofL-specific award committee. (*See* D.N. 8, PageID.34 ¶ 17) It thus did not "involve[] '[a] matter of political, social, or other concern to the community.'" *Blick*, 516 F. Supp. 3d at 725 (quoting *Leary*, 349 F.3d at 899); *see Whitney*, 677 F.3d at 296. In any event, Reed's language asking

8

faculty to "kindly refrain" from discussion (D.N. 8, PageID.34 ¶ 17) is "a far cry from an 'order' under [the Sixth Circuit's] prior restraint doctrine; [rather,] it was a mere request." *Novak*, 33 F.4th at 307. Thus, Wolek likewise fails to adequately allege prior restraint.[5] *Id*.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant Teresa Reed's motion to dismiss the amended complaint (D.N. 15) is **GRANTED**. This action is **DISMISSED**, **CLOSED**, and **STRICKEN** from the Court's docket.

March 31, 2025

David J. Hale, Judge
United States District Court

---

[5] In light of this conclusion, the Court need not consider Reed's remaining arguments. (*See* D.N. 15; D.N. 18)